## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| Joseph H. Shin, <br> Plaintiff <br><br> v. <br><br> Dartmouth Hitchcock Medical Center, <br> Defendant | **COMPLAINT AND** <br> **JURY DEMAND** |

Dr. Joseph H. Shin, ("Dr. Shin") by and through his undersigned attorneys, brings this action against the Defendant, Dartmouth Hitchcock Medical Center, ("DHMC") because he has been the victim of discrimination in violation of the Age Discrimination in Employment Act and New Hampshire law. Dr. Shin has also been the victim of retaliation for having opposed age discrimination in the workplace.

### Introductory Statement

1.      Dr. Shin was the victim of age discrimination and when he opposed the discrimination, he became the victim of retaliation.

2.      Dr. Shin seeks compensatory damages, including back pay and front pay, emotional damages, consequential damages, double backpay damages, counsel fees, and enhanced compensatory damages where appropriate.

### Parties to this Complaint

3.      Plaintiff, Dr. Joseph H. Shin resides at 12 Sargent Street, Hanover, NH 03755. Dr. Shin was hired by DHMC, in 2015.

4.      Dr. Shin was 61 years of age when the discrimination against him began.

5. Defendant, DHMC is a medical center located at 1 Medical Center Drive, Lebanon, NH 03766.

6. During his tenure, Dr. Shin served as the Section Chief: Plastic Surgery and Wound Care; Chief Pediatric Plastic Surgery; Director of Craniofacial Surgery Program and the Face of a Child Programs and Program Director for the Plastic Surgery Residency Training Program.

## Jurisdiction and Venue

7. This Court has subject matter jurisdiction over this action in that it alleges discriminatory acts under the Age Discrimination in Employment Act (ADEA) of 1967, 29 U.S.C. § 621(a)(2). This court has supplemental jurisdiction over Dr. Shin's state law claims that are brought under New Hampshire Statutes Section 354-A:7, et. seq.

8. Venue is proper in the United States District Court for the District of New Hampshire pursuant to 28 U.S.C. §1391(b) and (c) as the core nucleus of operative facts occurred within this venue, Defendant maintains a medical facility in New Hampshire, Plaintiff worked for Defendant at said medical facility, and Plaintiff resides in New Hampshire.

## Exhaustion of Administrative Remedies

9. On January 8, 2025, Dr. Shin timely filed a formal Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on the basis of age discrimination and retaliation. On March 18, 2025, Dr. Shin filed a supplemental charge with the EEOC asserting additional facts of age discrimination and retaliation.

10. On March 17, 2025, the EEOC prepared a Notice of Right to Sue letter. That letter was sent to Dr. Shin's counsel on April 2, 2025.

11. This action will be commenced in a timely fashion.

## Statement of Facts

12. At all relevant times, Dr. Shin performed services for DHMC in an exemplary manner.

13. Statistics demonstrate that the teams he led at DHMC have been extremely successful, both from a financial standpoint as well as the profoundly positive results that have been realized by the patients.

14. Dr. Shin successfully led the Wound Care, Pediatric Craniofacial Team, and the DH Integrated Plastic Surgery Residency programs.

15. Dr. Shin simultaneously served as the Professor of Surgery and Chief of the Section of Plastic Surgery at DHMC and Geisel SOM. Of the 240 listed faculty at Geisel School of Medicine, only 9 are full professors.

16. Prior to Dr. Shin's tenure, the residency training program in Plastic Surgery was placed on probation. He was asked to step in and run the program and had the program accredited again. Under Dr. Shin's leadership, the residency training program is thriving. The program is no longer on probation and has received commendations. This program is critical for the future of the field.

17. The teams that Dr. Shin led are highly functional. This is supported by statistics including clinical outcome and volume. Their productivity compares favorably with the other sections.

18. There is no basis for DHMC to have concerns regarding the quality of Dr. Shin's work as a physician or the manner in which he led his teams.

19. Upon information and belief, Dr. Thadeus Trus ("Dr. Trus") was appointed the Interim Chair of Surgery in the late Spring or early Summer of 2024.

20. Despite having no way of knowing how the section was run, Dr. Trus made statements that were critical of Dr. Shin and his leadership style during a meeting on August 6, 2024.

21. Dr. Trus continued to make statements to members of Dr. Shin's team that called into question Dr. Shin's competency and character.

22. Dr. Trus began to make these comments before having ever met with Dr. Shin and without hearing any members of the team complain about Dr. Shin.

23. Indeed, Dr. Trus was new to his role and was not familiar with Dr. Shin's leadership style or aware of how he interacted with the team or the patients.

24. Dr. Trus had no reason to question Dr. Shin's communication style.

25. Nevertheless, during a meeting with Dr. Shin on August 6, 2024, Dr. Trus intimated that Dr. Shin should step down as Chief and Program Director of the residency.

26. In addition, Dr. Trus has made a concerted effort to find grounds to take adverse action against Dr. Shin, even when none existed. In so doing, Dr. Trus has besmirched his good name and reputation amongst his peers.

27. Based on Dr. Trus' actions, Dr. Shin became concerned about his future at DHMC.

28. Dr. Shin's concerns were also based on the manner in which other similarly situated physicians and other senior employees were treated.

29. Dr. Gary Freed ("Dr. Freed") will be replacing Dr. Shin as Program Director.

30. Dr. Freed is at least 10 years younger than Dr. Shin. Of note, Dr. Freed had previously held this position and during his ineffective tenure as Program Director, the program was placed on probation due to his serious mismanagement.

31. Several older Section Chiefs have been driven out of their positions at DHMC despite being leaders in their field.

32. Dr. Richard Barth, the Chief of General Surgery, was replaced by Dr. Kari Rosenkranz. Dr. Rosenkranz is approximately ten years younger than Dr. Barth.

33. Dr. Tim Ryken, Chief of Neurosurgery, was replaced by Dr. Andrew Jae and then by Dr. Nathan Simmons, who is at least seven years younger. The position was first offered to an even younger neurosurgeon who accepted the position but later declined it.

34. Dr. David Finley, the Chief of Thoracic Surgery, was replaced by Dr. Tim Millington, who is significantly younger.

35. Dr. Alan Hartford, the former Chief of Radiation Oncology, was harassed and driven out. He is over the age of 60.

36. The former Chief of Pediatric Anesthesia, was denied the promotion to a permanent position despite being fully qualified. The position was filled by Dr. Jacob Schauer who is more than 10 years younger than Dr. O'Flaherty.

**Dr. Shin Opposed Unlawful Age Discrimination**

37. On September 11, 2024, Dr. Shin caused a letter to be sent to DHMC placing the Medical Center on notice of his concerns about ageism.

38. DHMC was on notice and engaged counsel to address Dr. Shin's concerns of age discrimination.

39. Discussions through email and telephone continued from September 2024 through early January 2025.

## Retaliation and Continued Discrimination

40. On December 16, 2024 an email was sent indicating that based on utilization rates, two Blocks were being eliminated from Dr. Shin's Plastic Surgery team and being allocated to a different team with higher patient demand. This elimination occurred despite these blocks having been in place for many years, this metric is rarely used, and this has been applied selectively.

41. This email was intended to target Dr. Shin. The block that was selected for reallocation was the block that Dr. Shin had for nearly a decade. This is significant because it meant DHMC chose Dr. Shin's room and cases for elimination.

42. From January through March 17, 2025, Dr. Shin was not allowed to participate in administrative meetings and decisions.

43. Several administrative and staffing decisions were made behind his back.

44. Dr. Trus succeeded in eroding the trust and cohesion of the team.

45. On March 17, 2025, Dr. Shin was removed from his positions as Section Chief, Director of Wound Care, and Program Director.

46. The reasons proffered by DHMC were patently and demonstrably false.

47. DHMC has a demonstrated track record of forcing older professionals out of their jobs. The positions are filled by significantly younger people.

48. On or around March 17, 2025, DHMC also demoted the head nurse of the section of Plastic Surgery who worked with Dr. Shin and in response she retired. She was the same age as Dr. Shin and was also replaced by someone who is significantly younger.

49. Dr. Shin's position, Section Chief of Plastic Surgery, was given to Dr. Michael Matthew who has limited experience in administration of either a section or residency program

and is approximately 51 years of age. The Residency Program Director and position for Medical Director of Wound Care and Podiatry were given to Dr. Gary Freed who is, upon information and belief approximately ten years younger than Dr. Shin. He had been removed from these roles previously due to ineffectiveness and that the national accrediting body for residencies the ACGME had placed the program into probation whereupon Dr. Shin successfully had the program successfully reaccredited within a few months

50. But for ageism, Dr. Shin would not have been the target of Dr. Trus' wrath and would not have been stripped of his titles, humiliated in the presence of his peers, and caused to have a dramatic reduction in his compensation.

51. But for Dr. Shin's complaints of age discrimination, DHMC would not have made false allegations and removed him of his leadership positions.

52. Dr. Shin's protected activities of complaining about the ageism led DHMC to further victimize him and target him with additional harassment, discrimination, and continued retaliation.

## COUNT I
## AGE DISCRIMINATION UNDER THE ADEA

53. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth herein.

54. Dr. Shin was 61 years of age when he experienced age discrimination and began to sufferer adverse employment action.

55. Dr. Shin, with good reason, believed that Dr. Trus was targeting him and trying to find a reason to force him out of his job.

56. Dr. Trus spent the months of August 2024 through early March 2025 trying to find ways to justify taking adverse action against Dr. Shin.

57. This included threats, innuendoes, statements to his peers, and efforts to drive a wedge between Dr. Shin and his team.

58. Ultimately, on March 17, 2025, Dr. Trus succeeded in removing Dr. Shin from his leadership positions.

59. DHMC's actions have caused Dr. Shin to suffer significant damages.

## COUNT II
## AGE DISCIRMINATION UNDER NEW HAMPSHIR LAW

60. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth herein.

61. Dr. Shin was 61 years of age when he experienced age discrimination and began to sufferer adverse employment action.

62. Dr. Shin, with good reason, believed that Dr. Trus was targeting him and trying to find a reason to force him out of his job.

63. Dr. Trus spent the months of August 2024 through early March 2025 trying to find ways to justify taking adverse action against Dr. Shin.

64. This included threats, innuendoes, statements to his peers, and efforts to drive a wedge between Dr. Shin and his team.

65. Ultimately, on March 17, 2025, Dr. Trus succeeded in removing Dr. Shin from his leadership positions.

66. DHMC's actions have caused Dr. Shin to suffer significant damages.

## COUNT III
## RETALIATION

67. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth herein.

68. Dr. Shin complained of age discrimination in September, 2024 and the discussion regarding his complaint continued through early January 2025.

69. Dr. Shin suffered retaliation when Dr. Trus escalated efforts to find a basis to take action against Dr. Shin.

70. Throughout the period of August 2024 through March of 2025, Dr. Trus continued to make decisions regarding Dr. Shin's team without notice to Dr. Shin.

71. On December 16, 2024 and March 17, 2025, DHMC retaliated against Dr. Shin by making staffing and scheduling changes without his prior notice or input and then by stripping him of his leadership roles.

72. But for Dr. Shin's complaints of discrimination, he would not have suffered this adverse employment action.

## Jury Demand

73. The Plaintiff demands that this case be tried before a jury of his peers.

**WHEREFORE**, Dr. Shin respectfully requests that this Honorable Court grant the following relief:

a) Damages for past lost wages and benefits;

b) Double backpay damages because the Defendant's conduct was willful;

c) Damages for future lost wages and benefits;

d) Damages for emotional pain and suffering;

e) Enhanced compensatory damages;

f) Counsel fees; and

    g)    Such other and further damages as may be deemed to be just and proper.

**Dated**: May 21, 2025

    */s/ Katherine Brustowicz*
THE WAGNER LAW GROUP, P.C.
***Attorney for Plaintiff***
Katherine Brustowicz, Esq. BBO#: 276866
One Financial Center
Suite 3610
Boston, MA 02111
Telephone: (617) 532-8045
KBrustowicz@wagnerlawgroup.com
Facsimile: (617) 357-5250

{15403/A0944768.1}

## **CERTIFICATE OF SERVICE**

  I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing and paper or non-electronic copies will be delivered to those indicated as non-registered participants as of today's date.

              */s/ Katherine Brustowicz*
              Katherine Brustowicz

{15403/A0944768.1}